# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 17, 2023

Lyle W. Cayce
Clerk

No. 23-20381

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JEFFREY DEROND KERSEE,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CR-639-1

Before GRAVES, HIGGINSON, and HO, *Circuit Judges*.

JAMES E. GRAVES, JR., *Circuit Judge*:

Defendant Jeffrey Kersee appeals the district court order revoking his supervised release and sentencing him to six months of incarceration. A defendant has a qualified right to confrontation in a revocation proceeding. Because Kersee's qualified right to confront and cross examine adverse witnesses was denied without good cause, we VACATE the district court's order revoking Kersee's supervised release and REMAND for a new hearing to be convened within 21 days of the date of this order.

**Background**

No. 23-20381

In 2013, Jeffrey Kersee pleaded guilty to one count of unlawfully transporting a minor over state lines with intent to engage in sexual activity. Kersee was sentenced to a 120-month mandatory minimum prison term and five years of supervised release. His supervised release began on May 14, 2021.

On October 25, 2022, Kersee was arrested and charged with Criminal Mischief for damaging the property (i.e., a window) of Kalee Marsteller, his girlfriend. On October 26, 2022, Marsteller submitted a notarized letter stating that Kersee did not damage her property and the misdemeanor was dismissed. Following the dismissal, Kersee's probation officer filed a noncompliance report stating that Kersee had violated his conditions of supervised release. The officer recommended that no action be taken, and the district court agreed.

On February 23, 2023, the probation officer submitted a petition for revocation of Kersee's supervised release based on three violations: (1) the dismissed misdemeanor, (2) one new charge of felony aggravated robbery, and (3) one new charge of misdemeanor family assault. Marsteller was the complaining witness in the new charges, resulting from an incident between the parties on December 23, 2022. At Marsteller's request or due to her absence, the two felony charges of aggravated robbery and the misdemeanor charge of family assault were dismissed. Despite four dismissals in state criminal court, a revocation hearing was scheduled for August 2, 2023.

At the revocation hearing, the government called no witnesses. Instead, it presented seven documentary exhibits: two criminal complaints from Officer Matthew Walker, a criminal complaint from Deputy Monica Trevino, a Court Order dismissing the Aggravated Robbery charge, a Court Order dismissing the Criminal Mischief charge, a Court Order dismissing the Criminal Assault on a Family Member charge, and Kersee's plea agreement.

No. 23-20381

Officer Matthew Walker's complaints relied on body camera video, a report from another officer, and an audio-recorded phone interview with Kersee. All three criminal complaints included recollections of witnesses' previous statements, however, and were thus hearsay within hearsay. Nevertheless, the government did not call Officer Matthew Walker nor Deputy Monica Trevino. The government did not call Marsteller's mother, Denise Marsteller, whose statements were recounted in Officer Matthew Walker's complaint. Nor did the government call Marsteller's friend, Jalisa Mathis, whose statements were recounted in Deputy Monica Trevino's complaint. The government relied on statements from four witnesses and called none.

In response, Kersee submitted an affidavit of Marsteller stating that she was intoxicated when she spoke to the police and that Kersee had neither assaulted her nor attempted to steal her property.

Additionally, Kersee objected to the government's evidence, claiming that it implicated his due process right to confront and cross-examine adverse witnesses. Kersee contended that the reliability of the exhibits was undermined by the affidavit from Marsteller withdrawing her earlier accusations. Kersee argued, therefore, his interest in confrontation outweighed the government's interest in preventing confrontation and cross examination.

In response to the objection, the prosecutor informed the district court that it did not bring in Marsteller to testify because it was likely that she was "going to lie," implying that the statements in the affidavit submitted by Kersee were false. The prosecutor offered no explanation for the absence of the officers who authored the police reports, the absence of Marsteller's friend, or the absence of her mother.

The district court overruled Kersee's objection and reasoned that the hearsay statements in the exhibits were "reliable and of probative value."

No. 23-20381

The district court admitted and considered those statements as evidence against Kersee and, subsequently, deemed the allegations reliable.

The district court found Kersee in violation and revoked his supervised release. The district court sentenced Kersee to six months in custody and extended his term of supervised release to May 13, 2026. On August 8, 2023, Kersee filed a timely notice of appeal. On August 23, 2023, Kersee filed an opposed motion to expedite the appeal, given that his projected release date—January 21, 2024—is quickly approaching. This Court granted the motion.

## Legal Standard

"The decision to revoke supervised release is reviewed under an abuse of discretion standard, but the constitutional challenge about the right of confrontation of adverse witnesses is reviewed *de novo*." *United States v. Grandlund*, 71 F.3d 507, 509 (5th Cir. 1995), *opinion clarified*, 77 F.3d 811 (5th Cir. 1996).

The Confrontation Clause is not applicable in a supervised release revocation hearing. *United States v. McDowell*, 973 F.3d 362, 365 (5th Cir. 2020). But because a "person's liberty is at stake" in revocation proceedings, due process entitles the defendant to a "qualified right to confront and cross-examine adverse witnesses." *Grandlund,* 71 F.3d at 509-510.

The confrontation of a witness may be denied on a finding of good cause. The court determines good cause by "employ[ing] a balancing test which weighs the defendant's interest in the confrontation of a particular witness against the government's interest in the matter." *Id.* The "indicia of reliability of the challenged evidence" is critical to the court's analysis. *Id.* This Court has routinely held that a defendant's interest in confrontation is weaker if the evidence is based on "scientifically-verifiable facts." *United*

No. 23-20381

*States v. Minnitt,* 617 F.3d 327, 335 (5th Cir. 2010); *see also United States v. McCormick*, 54 F.3d 214, 222 (5th Cir. 1995).

To deny a qualified right to confrontation, the district court must make a "specific finding of good cause" and failure to do so "may require reversal in most instances." *Grandlund*, 71 F.3d at 510; *see also Baker v. Wainwright*, 527 F.2d 372 (5th Cir. 1976)(explaining that there must be an explicit, specific finding of good cause and the reasons should be included in record of the revocation hearing). But where good cause exists, this error is harmless if "its basis is readily found in the record, and its finding is implicit in the court's ruling." *Grandlund*, 71 F.3d at 510.

## Analysis

First, this Court evaluates Kersee's interest in confrontation. Kersee was charged with aggravated robbery, a felony offense. This offense is classified as a "Grade B" violation under the Sentencing Guidelines. *See* U.S.S.G. § 7B1.1(a)(2). Revocation is mandatory for a "Grade A" or "Grade B" violation. U.S.S.G. § 7B1.3(a)(1). Given that this is a Grade B violation, "[Kersee's] interest is heightened." *United States v. Alvear*, 959 F.3d 185, 189 (5th Cir. 2020).

Moreover, this Court has held that "the use of hearsay impermissibly violates a right to confront and cross-examine" a declarant. *Farrish v. Mississippi State Parole Bd.*, 836 F.2d 969, 978 (5th Cir. 1988). Additionally, this Court has emphasized that allowing "[hearsay] testimony through a police officer can be particularly damaging in light of an officer's perceived credibility." *United States v. Jimison*, 825 F.3d 260, 265 (5th Cir. 2016).

In *Farrish*, a parole board revoked a defendant's parole based on an out-of-court statement to a police officer. Because the out-of-court statement was contrary to the defendant, the parole board had to make a credibility choice. The Court held that the admission of the statements through the

No. 23-20381

police officer effectively deprived Farrish of his due process right to confront the adverse witness.

In *Jimison*, the decision to revoke a defendant's supervised release was solely based on a Special Agent's testimony that a confidential informant identified the defendant in a lineup. The Special Agent's testimony was the only evidence offered to prove that the defendant violated the terms of his supervised release. The district court did not make a finding of good cause to allow the Special Agent's testimony and sentenced Jimison to prison followed by another term of supervised release. On appeal, this Court held that the informant's statements and out-of-court identification gave rise to a confrontation right. Further, this Court could not find implicit good cause to allow the testimony and remanded for a new hearing.

Similarly, here the district court determined that Kersee had committed parole violations by relying on out-of-court statements. Like *Jimison*, these out-of-court statements were the only evidence the government offered to prove that Kersee violated the terms of his supervised release. But because the court relied on a statement from Marsteller that was later withdrawn, there is a credibility choice among the original statement from Marsteller, the documentary testimonials from adverse witnesses, and Marsteller's recantation. Thus, unlike *Farrish*, where the credibility choice was between two conflicting accounts, here the qualified right to confront adverse witnesses is even more significant because the credibility choices are greater.

The district court offered three reasons for denying confrontation: (1) the adverse witness is a domestic violence victim, (2) statements in the criminal complaints were consistent and reliable, and (3) the cross-examination would not yield new information. These reasons do not sufficiently support the government's interest in denying the opportunity to confront and cross examine adverse witnesses.

No. 23-20381

First, Kersee offered Marsteller's affidavit in rebuttal to the hearsay evidence which was admitted over his objection. Marsteller's recantation affidavit, if truthful, exonerates him of the alleged crimes.

Second, the district court observed that women "in abusive relationships will change their mind out of fear or economic reasons," but the government offered no evidence of either in this case. The government cites *Alvear* to support its argument that Marsteller's fear justified her absence at the revocation hearing. However, in *Alvear*, there was "ample record evidence justifying an inference that Alvarez was too afraid." *Alvear*, 959 F.3d at 189 . Alvarez, the victim in *Alvear*, contacted the probation officer numerous times and had a protective order against Alvear. *Id*. Here, the government only claimed that Marsteller was not called because she would lie.

Third, this Court has reasoned that "scientifically-verifiable" facts weaken a defendant's confrontation interest. *See Minnitt*, 617 F.3d at 334 (holding that urinalysis reports were reliable and weigh in favor of a finding of good cause to deny confrontation of lab technicians); *see also McCormick*, 54 F.3d at 222. But the statements against Kersee in the criminal complaints are very different from scientifically verifiable facts.

On balance, the district court failed to make a showing of good cause. Kersee's interest in confronting the adverse witnesses outweighs the government's interest in denying that opportunity. Thus, the district court erred in denying Kersee his due process right to confront and cross-examine adverse witnesses.

## Conclusion

For these reasons, we VACATE the district court's order revoking Kersee's supervised release and REMAND for a new hearing to be convened within 21 days of the date of this order.

No. 23-20381

Jᴀᴍᴇs C. Hᴏ, *Circuit Judge*, concurring:

Violent criminals should be prosecuted, convicted, disarmed, and incarcerated. *United States v. Rahimi*, 61 F.4th 443, 463 (5th Cir. 2023) (Ho, J., concurring), *cert. granted*, 143 S. Ct. 2688 (2023).

But we don't presume that citizens are dangerous criminals. We presume they're innocent. And to overcome that presumption, we require more than just notice and a hearing. We afford the accused with the assistance of counsel and a meaningful opportunity to present evidence and confront adverse witnesses. We impose a robust burden of proof on the government. And when in doubt, we err on the side of liberty.

These principles inform our decision today. I accordingly concur.

## I.

The district court found Jeffrey Kersee guilty of assaulting his girlfriend, among other offenses, and sentenced him accordingly. *Ante*, at 2–4. But it did so without affording him the "right to confront and cross examine adverse witnesses." *Id.* at 1. So the majority vacates his sentence — despite meaningful evidence that he is a dangerous criminal. *Id.* at 4–7.

I agree and therefore concur. I write separately to observe that the court grants relief, not because it is insensitive to domestic violence or the safety of Kersee's girlfriend, but because it is sensitive to the constitutional rights of the accused. *Cf. Counterman v. Colorado*, 600 U.S. 66 (2023).

In that respect, the decision today reminds me of our decision in *Rahimi*. We initially upheld Rahimi's conviction, 2022 WL 2070392, but we later reversed ourselves in light of *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). *Bruen* involves the Second Amendment, not criminal procedure. But *Bruen* admonishes us not to treat the Second Amendment as "a second-class right, subject to an entirely different body of rules than the

No. 23-20381

other Bill of Rights guarantees." *Id.* at 2156 (quotations omitted). And the Court has construed other provisions, like the First Amendment, to require procedural safeguards to protect substantive rights, like freedom of speech.[1]

So in *Rahimi*, we followed the Court's directives and conceptualized *Bruen*, not as a substantive right of dangerous criminals to run armed and free, but as a procedural protection for those subject to disarmament on suspicion of criminal activity. We applied the history and tradition test articulated in *Bruen*, and found that the only historical analogues relevant to Rahimi involved the use of the criminal justice system—not civil protective orders—to disarm dangerous criminals. *See Rahimi*, 61 F.4th at 458 (noting laws that "only disarmed an offender after criminal proceedings and conviction"); *id.* at 463–64 (Ho, J., concurring) (noting that society has traditionally disarmed dangerous people through the criminal justice system). We concluded that, to survive *Bruen*, the use of civil protective orders to disarm citizens must presumably, and at a minimum, approximate the protections afforded to those accused of a crime. *See, e.g., Addington v. Texas*, 441 U.S. 418, 425 (1979) (requiring heightened standard of proof in civil commitment proceedings, because "[i]n cases involving individual rights, whether criminal or civil, the standard of proof at a minimum reflects the value society places on individual liberty") (cleaned up).

---

[1] *See, e.g., City of Littleton v. Z.J. Gifts D-4*, 541 U.S. 774, 778 (2004) (examining "the First Amendment's procedural requirements"); *Waters v. Churchill*, 511 U.S. 661, 669 (1994) (plurality opinion) ("[I]t is important to ensure not only that the substantive First Amendment standards are sound, but also that they are applied through reliable procedures. This is why we have often held some procedures—a particular allocation of the burden of proof, a particular quantum of proof, a particular type of appellate review, and so on—to be constitutionally required in proceedings that may penalize protected speech.") (collecting cases); *id.* at 671 (noting that "some procedural requirements are mandated by the First Amendment").

No. 23-20381

And that's what was missing in *Rahimi*. Rahimi "was *suspected* of other criminal conduct," but he "was not a convicted felon." 61 F.4th at 452. Yes, he was subject to a civil protective order (which was entered *prior* to those other suspected crimes), and yes, he received notice and an opportunity for a hearing. *Id.* at 448–49. But the order was entered "without counsel or other safeguards"—in fact, it didn't even include a "formal hearing" or judicial "record." *Id.* at 459. Nor did it apply a meaningful presumption of innocence or robust burden of proof. *See, e.g., Roper v. Jolliffe*, 493 S.W.3d 624, 638 (Tex. App. 2015) (noting that the "traditional standard of proof by a preponderance of the evidence applies" in "[civil] protective order cases"). So yes, he agreed to the order—but without any of the protections we typically provide to the accused to ensure that they can meaningfully protect their rights.

So we vacated Rahimi's conviction. The lack of adequate procedural safeguards rendered the statute in *Rahimi* deficient on its face.[2] And for the same reasons, the court is right to grant relief to Kersee as well.

## II.

This case further parallels *Rahimi* in another way. In granting relief to Kersee, our court acknowledges the unfortunate fact that people sometimes allege domestic violence, but then later recant. *See ante*, at 7 ("Marsteller's recantation affidavit, if truthful, exonerates him of the alleged crimes."); *but*

---

[2] *See, e.g., Freedman v. Maryland*, 380 U.S. 51, 53, 60 (1965) (holding statute unconstitutional "in its entirety" because it "fails to provide adequate safeguards against undue inhibition of protected expression"); *United States v. Salerno*, 481 U.S. 739, 751–52 (1987) (holding that "extensive safeguards" are necessary "to repel a facial challenge"); *cf. United States v. Morrison*, 529 U.S. 598, 611–13 (2000) (lack of jurisdictional element renders federal statute unconstitutional) (citing *United States v. Lopez*, 514 U.S. 549, 562 (1995) (same)).

No. 23-20381

*see id.* ("The district court observed that women in abusive relationships will change their mind out of fear or economic reasons.") (quotations omitted).

When faced with competing visions of the truth, judges must have some mechanism by which to determine which version of events to credit. The procedures must be sufficiently reliable to comply with the Constitution and inspire confidence in the results. Respect for the rights of the accused requires nothing less. And that is no less true here than in *Rahimi*. *See, e.g.*, *Rahimi*, 61 F.4th at 465–67 (Ho, J., concurring) (noting that civil protective orders are routinely granted without evidence of danger, often automatically—including even against victims of domestic violence).

\* \* \*

The Supreme Court has repeatedly granted relief to dangerous criminals out of concern about the procedures used to determine their dangerousness. *See, e.g.*, *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020) (murder); *United States v. Davis*, 139 S. Ct. 2319 (2019) (violent felonies); *Johnson v. United States*, 576 U.S. 591 (2015) (armed career criminals); *Crawford v. Washington*, 541 U.S. 36 (2004) (assault and attempted murder); *Maryland v. Craig*, 497 U.S. 836 (1990) (sexual abuse of a child); *Miranda v. Arizona*, 384 U.S. 436 (1966) (kidnapping and rape); *Gideon v. Wainwright*, 372 U.S. 335 (1963) (burglary). In none of these cases did the Supreme Court decline to uphold constitutional safeguards just because the defendant was credibly accused of a dangerous crime. If government must turn "square corners" when it comes to the removal of illegal aliens, *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021), surely it must do the same when it comes to the basic rights of our own citizens. I accordingly concur.